FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 03, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GABRIEL M.H.,<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | NO:  1:21-CV-03053-LRS<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

  BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13, 14. This matter was submitted for consideration without oral argument. Plaintiff is represented by Attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Lars J. Nelson. The Court

---

  [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER ~ 1

has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 13, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 14, and **REMANDS** the case back to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Gabriel M.H.[2] protectively filed an application for Supplemental Security Income (SSI) on November 7, 2018, Tr. 91, alleging an onset date of November 1, 2018, Tr. 181, due to attention deficit hyperactive disorder (ADHD), glaucoma, learning disability, arm/shoulder impairment, and mental health issues, Tr. 203. Plaintiff's applications were denied initially, Tr. 126-29, and upon reconsideration, Tr. 135-41. A hearing before Administrative Law Judge Richard Hlaudy ("ALJ") was conducted on September 2, 2020. Tr. 53-80. Plaintiff was represented by an attorney and testified at the hearing. *Id*. The ALJ also took the testimony of vocational expert Franklin Corbin. *Id*. The ALJ entered an unfavorable decision on October 6, 2020. Tr. 15-29. The Appeals Council denied review on February 23, 2021. Tr. 1-5. Therefore, the ALJ's October 6, 2020 decision became the final decision of the Commissioner. The matter is now before

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was awarded SSI as a child with severe impairments of ADHD, Surge-Weber Syndrome, and juvenile glaucoma.  Tr. 85-90.  As an adult, Plaintiff applied for SSI alleging disability since age 19.  Tr. 181.  The highest grade Plaintiff completed was the eleventh grade, he did not receive a GED, and he was in special education throughout school.  Tr. 204, 392.  Plaintiff reported no formal work history, but performed odd jobs paid under the table.  Tr. 204, 392.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a

ORDER ~ 3

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

ORDER ~ 4

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER ~ 5

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of application, November 7, 2018. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: glaucoma; Surge Weber syndrome; status post right shoulder repair with chronic anterior right should instability; ADHD; and anxiety disorder. Tr. 18. At step three, the ALJ found that Plaintiff's impairments or combinations of impairments do not meet or equal the severity of one of the listed impairments. Tr. 18.

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> he can occasionally climb ramps, stairs; he had (sic) never climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, and crouch; he can never crawl; he can never reach overhead with his right upper extremity; he must avoid concentrated exposure to vibration; he must avoid all exposure to hazards; he is limited to simple repetitive tasks; he can have occasional superficial interaction with coworkers and the general public; and he cannot perform fast paced production quota work but he can perform goal oriented work.

ORDER ~ 7

Tr. 20. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 27. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including positions as bench assembler, bicycle assembler, and produce weigher. Tr. 28. On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the date of application, November 7, 2018, through the date of the decision. Tr. 29.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI under Title XVI. ECF No. 13. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly addressed the medical opinions in the record;
2. Whether the ALJ properly addressed Plaintiff's symptom statements;
3. Whether the ALJ met his burden at step five; and
4. Whether additional consultative evaluations are required upon remand.

## DISCUSSION

**1.    Medical Source Opinions**

Plaintiff argues that the ALJ failed to properly address the opinions from Donna LaVallie, D.O., Mary Alto, M.D., and Douglas Ricks, O.D. regarding his visual limitations. ECF No. 13 at 4-7.

ORDER ~ 8

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources. 20 C.F.R. § 416.920c(a). Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source. 20 C.F.R. § 416.920c(c). The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). *Id.* The regulations emphasize that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(b). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Supportability and consistency are further defined in the regulations:

ORDER ~ 9

(1) *Supportability*.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c).[3]

Dr. LaVallie, Dr. Alto, and Dr. Ricks included the following limitation in their opinions: caution with activities requiring peripheral vision and depth perception.  Tr. 103, 120, 400.  Additionally, Dr. LaVallie and Dr. Alto stated that Plaintiff had limited near acuity, far acuity, depth perception and field of vision in the left eye.  Tr. 103, 120.  The ALJ found these opinions to be persuasive.  Tr. 25-26.  However, the ALJ did not provide any limitations addressing near acuity, far equity, peripheral vision, or depth perception in his RFC determination.  Tr. 20.

---

[3]The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician.  ECF Nos. 13 at 5, 14 at 11-13.  The Ninth Circuit has held that the new regulations displace this prior caselaw.  *See Woods v. Kijakazi*, --- F.4th ---, 2022 WL 1195334 (9th Cir. Apr. 22, 2022).

ORDER ~ 10

Instead, the ALJ found that the vision loss in the left eye supported a finding that Plaintiff was limited to no fast-paced production quota work activity or exposure to hazards. Tr. 26.

Social Security Ruling (SSR) 96-8p states that the RFC assessment "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Defendant argues that the new regulations do not require the ALJ to accept or reject an opinion, thus the ALJ is not required to address the specific visual limitations opined by these providers in his RFC discussion (i.e. invalidating SSR 96-8p). ECF No. 14 at 11-12. When the new regulations were enacted, several SSRs were rescinded. *See* 82 Fed. Reg. at 5845. The fact that SSR 96-8p was not rescinded shows that it continues to be the Social Security Administration's policy that the ALJ is required to provide an explanation as to why an opinion was not adopted.

Defendant further argues that the ALJ did include the opined visual limitations in the RFC determination as the ALJ translated the limitations into the preclusion from fast paced production quota work and exposure to hazards. Tr. 14 at 13-14. However, the Dictionary of Occupational Titles (DOT) includes limitations for near acuity, far acuity, depth perception, and field of vision for all occupations. The occupation of small products assembler, alternatively titled bench assembler, requires frequent near acuity, no far acuity, frequent depth

ORDER ~ 11

perception, and no field of vision.  DICOT 706.684-022, 1991 WL 679050.  The occupation of assembler, bicycle II requires frequent near acuity, no far acuity, frequent depth perception, and no field of vision.  DICOT 806.687-010, 1991 WL 681498.  The occupation of produce weigher requires near acuity from one-third to two-thirds of the time, no far acuity, no depth perception, and no field of vision.  DICOT 299.587-010, 1991 WL 672639.  The ALJ is allowed to translate opined limitations into the RFC determination.  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015).  However, the ALJ's translation must be consistent with the opinion.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Here, the medical opinions addressed limitations in the work activities of near acuity, far acuity, depth perception, and field of vision.  The ALJ had discretion to address how the citied limitations translated into occupational terms such as always, frequent, occasional, or never, but he failed to even include these work activities in the RFC determination.  This was an error.  Considering the occupations identified by the ALJ at step five required near acuity and depth perception, this error was harmful and remand is required for the ALJ to properly address these opinions in full.

      While not raised by Plaintiff, the Court also notes that Dr. LaVallie and Dr. Alto opined that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, poor ventilation, etc.  Tr. 103, 121.  This limitation was also not included in the RFC assessment.  Tr. 20.  Upon remand, the ALJ will address this portion of

ORDER ~ 12

the opinions as well.

### 2. Plaintiff's Symptom Statements

Plaintiff argues that the ALJ erred in evaluating his symptom testimony. ECF No. 13 at 7-14.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical opinions addressed above, a new assessment of Plaintiff's subjective symptom statements will be necessary.

### 3. Step Five

Plaintiff argues that the ALJ failed to meet his burden at step five because

ORDER ~ 13

the job numbers provided for each DOT code was unreliable. ECF No. 13 at 14-17.

Here, the Court has found that the ALJ's RFC determination did not properly address the opined visual limitations. Therefore, a new RFC determination is required upon remand. A new RFC determination will require a new step five determination. Therefore, the ALJ will call a vocational expert to testify at any remand proceedings. At that time, the ALJ and Plaintiff's counsel can address job numbers in full if the vocational expert identifies any jobs associated with the hypothetical(s) presented at the hearing.

**4.    Consultative Evaluations on Remand**

Plaintiff requests that both physical and psychological evaluations be required upon remand. ECF No. 13 at 7, 17-21.

First, Plaintiff argues that a physical consultative evaluation is required because the opinions of Dr. Kennedy, Dr. Alto, and Dr. LaVallie differ regarding the functional ability of his right shoulder. ECF No. 13 at 7. In July of 2018, Dr. Dr. Kennedy stated that Plaintiff should not use the right upper extremity for lifting, pushing, pulling or reaching. Tr. 351. Plaintiff had a surgical repair of his right shoulder in September of 2018, Tr. 354, and filed for benefits in November of 2018, Tr. 181. In April of 2019, Dr. LaVallie precluded Plaintiff from pushing and pulling with the right upper extremity. Tr. 102. In October of 2019, Dr. Alto limited Plaintiff's pushing and pulling with the right upper extremity, stating

ORDER ~ 14

"[m]ost lifting/maneuvering should be done with the left [upper extremity]." Tr. 119. Plaintiff is accurate that there is no consultative evaluation in the record addressing his right shoulder post-surgery. Therefore, upon remand, the ALJ will order a physical consultative evaluation to assess the functional abilities of Plaintiff's right upper extremity.

Second, Plaintiff argues that a new psychological evaluation with intellectual testing is required. ECF No. 13 at 20-21. On February 20, 2019, Alexander Patterson, Psy.D. completed a psychological evaluation that included a WAIS-IV showing a full-scale IQ of 70. Tr. 394. Dr. Patterson gave Plaintiff a rule out diagnosis of mild intellectual disability, stating that Plaintiff's explanations regarding prior learning difficulties, behavioral problems, and other mental health symptoms were vague and the IQ scores, which were significantly lower than his scores while in school, may be due to poor effort. Tr. 394-95. Therefore, Dr. Patterson had insufficient objective evidence to conclude that Plaintiff had an intellectual disability. Tr. 395. A psychological evaluation has already been performed that included intellectual testing and the lack of evidence was a result of Plaintiff's presentation. Therefore, a new psychological evaluation is not required upon remand. The ALJ may call a psychological expert to testify at remand proceeding if he deems it necessary to resolve the conflicting IQ scores.

## CONCLUSION

Here, Plaintiff requests that the case be remanded for additional proceedings,

ORDER ~ 15

including physical and psychological consultative evaluations. ECF No. 13 at 17-21. The Court finds that further administrative proceedings are appropriate for the ALJ to properly address the opinions of Dr. LaVallie, Dr. Alto, and Dr. Ricks, to readdress Plaintiff's symptom statements, and make a new step five determination. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). A new physical consultative evaluation is required to address the functional limitations of Plaintiff's right upper extremity. A new psychological consultative evaluation is not required. The ALJ may call a psychological expert at any remand hearing. The ALJ shall call a vocational expert to testify at a remand hearing and allow Plaintiff's counsel adequate opportunity to cross examine the vocational expert.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** May 3, 2022.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER ~ 16